Antonio Igartua et al. v. Barack Obama, etc. et al. Good morning. May you please record? Good morning. Your Honor, never surrender to discrimination. We are here today as American citizens demanding our right to vote for five representatives to Congress and also in opposition to the U.S. government's attempt to rationalize and validate discrimination and keep us, the American citizens of Puerto Rico, in an inferior group of citizens in our own nation. The pattern of discrimination, as I have exposed in the brief and in the complaint, is at all levels. At the domestic level, by the absentee vote, there are already a million voters voting from foreign countries deciding elections in our nation, and by international democratic policies, which are also denied to us. There is a constitutional applicability in the interest of the government. For some cases, we can be treated like a state and not for others. And as Your Honor Torreya, Judge Torreya has stated many times and has written extensively about this, the origin of the discrimination are the insular cases. Briefly, I just want to mention that any court that insinuates that the insular cases are still applicable today is insinuating what the case said, that we are a subclass of people similar to Dred Scott, a property where property without any constitutional protection, we are savages or aborigines, alien races, and not part of the American family. That we are still in an arrangement that was established in those cases for temporary applicability and that has been extended for 117 years. What we... Counselor, when the court has already determined this issue, we as a panel don't have the authority to reverse that. I just don't know, even if everybody up here was sympathetic to everything you're saying, I don't know where we're supposed to go with your argument when it's already been determined. Well, I just want to establish that as origin. If the court deems that it cannot make a declaration on this issue, well, I don't want to intervene with that position. I just want you to tell me how this cause of action is different from the last one where this issue of the citizens of Puerto Rico right to elect a representative. How are your arguments different here than they were before? Well, let me explain. Let me explain, Your Honor. Okay. First, I request very respectfully that we treat in this case about what we are, American citizens. And to end this subject, this issue, I invite you to revisit again the case of U.S. versus La Voix where it makes a summary of all the constitutional applicability of Puerto Rico and incorporates us following my line of argument, which the district attorney did in that case. Read the brief. And then Playa de Ponce versus Ruyan where the court already stated that the district court of Puerto Rico, that Puerto Rico is an incorporated territory where the cases do not apply. And then particularly I want you to consider that the case of U.S. versus the Puerto Rico Police Department whereby the same government requested us to amend amendments 1, 5, and 14 to guarantee the constitutional protection of the citizens of Puerto Rico. And we are the only territory or any jurisdiction that is paying $100 million to comply with the applicability of the Constitution. And that's important because we are being denied applicability in this case of the Constitution. And lastly, the case of U.S. versus Mercado Flores, again by Joseph P. de Moncego, saying that we are between an incorporated territory and a state. He named it a commonwealth. Now, that being said, I would like now to come and explain to you briefly my position about the treaty that we are requesting to be applied and that supports our claim, the International Covenant on Civil and Political Rights. The government says that it doesn't apply because it is not self-executing. Now, I want to enter into this because even Honorable Josh Lippes mentioned that issue in his previous opinions, dissenting or whatever, and that's not the case. The thing is that in practice, treaties have reservations. And the fact that they have reservations don't mean that they are not applicable. And as I will show you here, and also you know that this treaty did not make any reservations to the articles that we are invoking to have a right to vote, which are Article 2 and Article 25. Let me mention, if you allow me please, the different reasons that support our position. First of all, the mandatory language. That subject, supported also by Professor T. Bergendahl, says that in page 48 of his international law book, it creates individual rights. The fact that the United States is complying with the reports that are required under the treaty. They have submitted every report. In one of them, in the 2011 report, they stated that they were considering adopting legislation to have the citizens of D.C. to vote without a constitutional amendment. Counsel, and I mean this quite respectfully. I mean, this is apropos of Judge Thompson's question. Aren't your arguments in a sense a rehearsal for an argument that you would hope to make to an en banc court, which could perhaps rule differently than a previous en banc court on the very issue that you're addressing? Isn't that what you hope to be able to do? Well, that's what I'm trying to do. But I'm trying to mention all the factors that support our claim. For example, the United States also signed an affirmative action document a year ago, which expands their obligations under the treaty. And that also is different from the panel before. So they have continued after the panel to sign documents and to make policies that support our interpretation that the treaty is applicable. If you allow me, there was a document that was signed, which is the extensive legal obligation of the treaty. And respectfully, if you allow me to read two or three important matters of that interpretation by the United States and all the signatories, first, that the obligation is imposed on states to ensure them to all the obligations in their territory and subject to their jurisdiction, this treaty. Second, a state body may not invoke the provisions of its internal law, as they are doing, as justification for its failure to perform a treaty. Third, the Article 22 requires parties to take the necessary steps to give effect to the covenant in the domestic order. And fourth, failure to comply with this obligation cannot be justified by reference to political considerations. So imagine that's the interpretation that they have given to the treaty, the legal interpretation. Then there is the principle of practice and survival that the government has been signing this treaty in good faith. And, for example, in the restatement of the international law, Section 701, reporters note number one says that the covenant parallel rights that the Supreme Court has found to be constitutional protected to the right to vote, as a right to vote. Then there are other considerations, like, for example, that complement the interpretation of our support of this treaty. Not only the treaty, but the fact that the United States has signed similar treaties related to democratic rights, like the OAS Democratic Charter. The fact that the United States spends annually millions of dollars to prepare an annual country-by-country report of the democratic practices of all the countries. So imagine. And you have to round up. Your time is up. Okay. Thank you, Your Honor. Thank you. Mr. Freeman, good morning. Good morning, Your Honor. May it please the Court, Mark Freeman for the government. As I think the colloquy so far this morning has made clear, this Court has decided this question? No, they haven't, because nothing was mentioned to the fact that a request has been made for a three-judge court. And that is not decided in a final manner. Your Honor, that question was resolved in footnote six of the 2010 opinion, which specifically held that plaintiff's complaint was not seeking constitutional reapportionment within the meaning of Section 2284. And as a result, it was correct not to convene a three-judge court. Well, what about Goosby? I'm sorry? The case of Goosby, the Supreme Court. I'm sorry, Your Honor, I'm not sure. You're not familiar with it? I'm not familiar with how Goosby would relate. This Court does have en banc controlling precedent on all of the questions in this case. And then in a panel in 2010. Are you or are you not familiar with Goosby? Because I will try to help you. I'm sorry, I may be, Your Honor. I'm not recognizing it off the top of my head. Goosby v. Osler, 1973. I'm not familiar. Decision by Justice Brennan. I'll just read to you what I think is relevant here. Okay. I think I may be wrong. A claim, whether a claim for a three-judge court is substantial or not constitutionally, a claim is insubstantial only, quote, if its unsoundness so clearly results from previous decisions of this court, meaning the Supreme Court of the United States, as the foreclosest subject, it will leave no room for the inference that the questions sought to be raised can be the subject of controversy. And as far as I know, the Supreme Court has not stated otherwise in this particular area. Well, this court, since that time, including in the Vaza case in 1975 and a series of other cases cited in the first footnote of the argument section of our brief, has repeatedly held that a three-judge court is not required when the claims are insubstantial within the meaning of the law of this court. Of this court meaning the Supreme Court. I'm sorry, Your Honor, I'm referring to circuit precedent, referring to this court's decisions, and I would think when there is an en banc case on point that that would apply. But furthermore, as I mentioned, footnote six of the 2010 decision specifically held that Mr. which is essentially identical, is verbatim, many provisions of it are verbatim and the claims are the same here, did not raise this sort of constitutional apportionment claim. I'm not aware of what this court said. Well, that's panel precedent, Your Honor. Justice Breyton said this court, meaning the Supreme Court. As far as I know, that is still the law. Well, that is the law as of the 1970s, and this court has, as circuit courts do, elaborated upon that law. It is said that this court's precedent, when a claim is not substantial in the light of the court of appeals precedent, than a court of, than a three-judge court need not be convened. You say that you have a case that says. Yes, we've cited those cases, Your Honor, in the first footnote of the argument section of our brief. And we also pointed out, again, that this court, in a case brought by this plaintiff, on an identical complaint held that that complaint did not need to be referred to a three-judge court. I would think that is dispositive. All right. I heard your argument. We may disagree, Your Honor, but I do think that that is circuit precedent. Unless the court has further questions on the constitutional and treaty merits, we would just rest on our brief. Counsel is arguing that since we passed on the treaty issue that there have been treaty occurrences which might be reason for us to reconsider what we said before. Your Honor, that's not correct. There have not been any developments, and counsel has not pointed to any, that would affect the conclusion of the en banc court in 2005, of the panel in 2010, and of the Supreme Court in the SOSA decision in 2004, that the ICCPR, which is the only international instrument at issue in this case, is not self-executing, meaning it doesn't create individually enforceable rights in federal court. And I would note, as we point out in footnote seven of our brief, that the SOSA case, although it has been described by this court as considered dicta, which even that would be controlling on this court, I really do think it is a holding of the court, or at least it is an instrumental part of the court's reasoning. As we explain in that footnote, the Supreme Court was deciding, in the SOSA case, whether there was an international norm against arbitrary arrests that could be enforced through the Alien Tort Statute. Now, it's true that in the first part of the opinion, the court referred in what I think would be a dictum, taken by itself, to the fact that the ICCPR is not self-executing. But later in its opinion, and I believe this is at page 735 of the U.S. reports, cited in footnote seven of our brief, the Supreme Court went on to say, only because SOSA, Alvarez-McCain, could not identify a controlling, legally, domestically applicable principle of law in the UN Declaration of Human Rights or the ICCPR was it necessary for the court to go on and consider customary international law. In other words, the entire back half of the SOSA opinion was irrelevant, was unnecessary, unless it is a holding of the Supreme Court, as we think it is, that the ICCPR is not self-executing. That is the conclusion of the executive branch, it was the conclusion of the Senate, it is the conclusion of the Supreme Court in what I think is a holding, and it is the view of every court of appeals that has ever addressed the question. So, although it is circuit precedent, it is also correct, and for that reason as well, we'd ask the court to affirm. Thank you. Thank you.